# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

VERDI CONSTRUCTION, INC.,

           **Plaintiff,**                    **Case No. 2:07-cv-972**
                                               **JUDGE GREGORY L. FROST**
  **v.**                                  **Magistrate Judge Mark R. Abel**

CENTRAL OHIO COMMUNITY
IMPROVEMENT CORPORATION,

           **Defendant.**

## OPINION AND ORDER

This diversity action presents a contract dispute that is governed by the laws of Ohio.

The matter is before the Court for consideration of Verdi Construction, Inc.'s ("Verdi" or

"Plaintiff") motion for summary judgment on its claims against Central Ohio Community

Improvement Corporation"s ("COCIC" or "Defendant") and on Defendant's counterclaims

against it. For the following reasons, the Court **GRANTS** Plaintiff's motion.

## I. Background

The following facts are uncontroverted.

Defendant is a statutory not-for-profit community improvement corporation established

pursuant to Ohio Revised Code § 1724 *et seq*. Defendant acquired certain property in Gahanna,

Ohio and took proposals from real estate developers for the development of the property into a

mixed use commercial development to be known as the Central Park of Gahanna.

On October 30, 2006 Plaintiff and Defendant entered into a purchase agreement

("Agreement") that required Plaintiff to escrow $500,000 in earnest money (approximately 4%

of the $12 million purchase price). The Agreement was amended a total of seven times and,

through the second amendment the parties stipulated that the first $50,000.00 of the earnest

money would become non-refundable by January 2, 2007.

On February 5, 2007 the parties amended the Agreement for the seventh time ("Seventh

Amendment"). The Seventh Amendment contains the following termination clause that is at the

heart of this lawsuit:

> Seller and Purchaser agree that the Condition Date set forth in Section 10 of the Agreement shall be revised so that the condition Date shall be 5:00 p.m. (Eastern Standard Time) on February 12, 2007. The purchaser acknowledges that all of the Conditions Precedent and all of the Purchaser's other contingencies set for[th] in the Agreement have been waived and/or satisfied except Purchaser desires to have additional time in which to determine if the wetlands escrow proposal set forth in paragraph 2 below is acceptable (the "Wetlands Escrow Proposal"). Therefore the only basis for Purchaser terminating the Agreement shall be if Purchaser is not willing to accept the terms of the Wetlands Escrow Proposal. Should Purchaser desire to terminate this Agreement as a result of it not being satisfied with the Wetlands Escrow Proposal then Purchaser must notify Seller in writing (the "Wetlands Notice") prior to 5:00 p.m. (Eastern Standard Time) on February 12, 2007 that it is electing to terminate this Agreement. Such notice shall specially state that Purchaser is not willing to accept the Wetlands Escrow Proposal. If the Wetlands Notice is not received by the Seller by 5:00 p.m. (Eastern Standard Time) on February 12, 2007 Purchaser shall be deemed to have waived its remaining right to terminate the Agreement and the parties shall proceed to closing.
> . . . .
> If Purchaser fails to provide the Wetlands Notice to Seller by 5:00 p.m. (Eastern Standard Time) on February 12, 2007 in accordance with paragraph 2 above then Purchaser shall be deemed to have accepted the Wetlands Escrow Proposal (which proposal shall immediately become a part of the Agreement) and the parties shall proceed to closing.
>
> Seller and Purchaser agree that the Deposit Return Expiration Date shall be 4:59 p.m. (Eastern Standard Time) February 12, 2007. The parties hereto acknowledge that if Purchaser has not terminated this Agreement as permitted in paragraph 2 above by 4:59 p.m. (Eastern Standard Time) on February 12, 2007 the remaining $450,000.00 of Earnest Money shall become non-refundable and shall either (i) be applied as a credit against the Purchase Price at Closing; or (ii) in the event that this transaction does not close for any reason other than a default of the Seller the Earnest Money (plus all accrued interest) shall be paid to Seller.

(Doc. # 27, Exhibit H.)

On February 12, 2007 at 1:37 p.m., Plaintiff sent by facsimile a letter that stated:

This letter shall serve as written notice that Verdi is exercising its right to terminate the Purchase Agreement. By copy of this letter, Verdi is requesting Cornerstone Title Agency, LLC to return the remaining earnest money in the amount of $450,000.00 to Verdi Construction, Inc., 14322 21st Avenue North, Plymouth, MN 55447, Attn: Audie Tarpley.

Thank you for your attention to this matter.

(*Id.*, Exhibit I.)

On February 13, 2007 at 10:17 a.m., Defendant sent by facsimile a letter that indicated

that Plaintiff's "purported termination was ineffective and" that the $450,000.00 earnest money

had become non-refundable. (*Id.*, Exhibit J.) Defendant avers that, based upon statements

allegedly made by Plaintiff's representative Audie Tarpley, Plaintiff terminated the contract

because of financing difficulties, not because of dissatisfaction with the Wetland Escrow

Proposal.

On September 25, 2007 Plaintiff filed the instant action requesting return of the

$450,000.00 held in escrow by Defendant. (Doc. # 2.) On November 30, 2007 Defendant filed

its answer and counterclaimed against Plaintiff for breach of contract, declaratory judgment,

fraudulent misrepresentation, and unjust enrichment. (Doc. # 13.)

On August 24, 2008 Plaintiff filed its motion for summary judgment on all of its claims

against Defendant and all of Defendant's claims against it. (Docs. # 24, 25.) On September 19,

2008 Defendant filed its memorandum in opposition to Plaintiff's motion (Doc. # 32) and on

September 29, 2008 Plaintiff filed its reply in support of its motion (Doc. # 33).

## II.  Standard

Summary judgment is appropriate when the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. Rule. Civ. P. 56(c). In viewing the evidence, a court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *See Muncie Power Products, Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

However, "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover v. Speedway Super Am. LLC*, 284 F. Supp.2d 858, 862 (S.D. Ohio 2003) (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*; Fed. R. Civ. P. 56(c). That is, a party cannot rest on its pleadings or merely reassert its previous allegations. *Glover*, 284 F. Supp.2d at 862 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586 (1986)).

### III.  Analysis

The issues before the Court are (A) whether Plaintiff's termination letter was effective to

terminate the Agreement and entitle Plaintiff to a refund of $450,000.00 of its earnest money,

(B) if Plaintiff is given that portion of the earnest money would it constitute unjust enrichment,

and (C) whether Plaintiff's representative made fraudulent misrepresentations to Defendant's

representatives.

## A. Breach of Contract

With regard to the parties' claim that each breached the contract at issue here, there are

several important details upon which the parties agree.  First, the parties agree that the method of

terminating the agreement is set forth in the Seventh Amendment, which indicates that the

termination notice be in writing, received by February 12, 2007, received before 5 p.m. Eastern

Standard Time, and specially stating that Plaintiff is not willing to accept the Wetlands Escrow

Proposal.

Next, both parties agree that the contract language is unambiguous and that this Court is

limited to analysis of the four corners of the Agreement to determine the parties' intent.  Ohio

law is clear that when the language of the written instrument is clear and unambiguous, a court

may not go beyond the plain language of the agreement to determine the parties' rights and

obligations.  *Ed Schory & Sons, Inc. v. Society Nat'l Bank*, 75 Ohio St.3d 433, 440 (1996).

Instead, the court must give effect to the contractual language.  *Aultman Hosp. Assn. v.

Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989).

Finally, the parties agree that they intended the Agreement (including each amendment)

to be a final and complete expression of their understanding such that the Agreement is deemed

to be integrated, which prevents the Court from looking to any extrinsic or parole evidence.  *See

Trinova Corp. v. Pilkington Bros. P.L.C.*, 70 Ohio St.3d 271, 276-77 (1994) (if the parties

intended their writing to be a final complete expression of their agreement, the agreement is deemed to be "integrated," and the parol evidence rule generally bars evidence of prior negotiations). Expressed another way, "evidence can not be introduced to show an agreement between the parties materially different from that expressed by the clear and unambiguous language of the instrument." *Blosser v. Enderlin*, 113 Ohio St. 121, paragraph two of the syllabus (1925).

The parties disagree, however, as to whether Plaintiff effectively terminated the Agreement so that it is entitled to $450,000.00 of its earnest money returned to it. Defendant argues that, because Plaintiff failed to specially state that it was terminating the Agreement because it was not willing to accept the Wetlands Escrow Proposal, Plaintiff is not entitled to any of its earnest money returned. Contrarily, Plaintiff alleges that it fully complied with all conditions precedent to exercising its termination right and substantially performed the terms of the termination provision, which is all that was required of it. Thus, Plaintiff concludes that it effectively terminated the Agreement and that Defendant must return the $450,000.00 of earnest money. Plaintiff's argument is well taken.

### 1. *Plaintiff complied with all conditions precedent to exercising its termination right.*

A condition precedent is an occurrence that must take place before a contractual obligation becomes effective. *Troha v. Troha*, 105 Ohio App. 3d 327, 334 (Ohio Ct. App. 1995) (citing *Mumaw v. Western & Southern Life Ins. Co.*, 97 Ohio St. 1, 11 (1917)). It calls for the happening of some event, or the performance of some act, after the terms of the contract have been agreed on, before the contract shall be binding on the parties. *See id.* An entire contract must be considered when determining whether a condition precedent exists. *See id.* When

6

possible, courts should construe promises in a bilateral contract as mutually dependant and concurrent, rather than one promise as a condition precedent to the other. *Kaufman v. Byers*, 159 Ohio App.3d 238, 248 (Ohio App. 2 Dist. 2004).

Moreover, "[a]s a general rule, 'stipulations in an agreement are not to be construed as conditions precedent unless such construction is required by clear, unambiguous language; and particularly so where a forfeiture would be involved or inequitable consequences would result.' " *Id.* at 247 (citing *Provident Life and Accident Ins. Co. v. Nassif*, No. 99-1442, 2000 U.S. App. LEXIS 15727, at 8-9 (6th Cir. June 26, 2000)).

Thus, this Court must determine whether referring specifically to declining to accept the Wetlands Escrow Proposal is a condition precedent to an effective termination of the Agreement. Plaintiff points to an analogous case that guides this Court's analysis. *See Fifth Third Bank v. Ducru Ltd. P'ship*, No. C-050564, 2006 WL 2164700, 2006-Ohio-3944 (Ohio App. 1 Dist. Jul 28, 2006).

In *Fifth Third Bank*, the plaintiff had entered into a commercial lease that allowed it to terminate the lease any time after ten years. To exercise that right, Fifth Third had to provide written notice of its intent to terminate the lease and had to deliver a promissory note for the amount of the termination payment by the termination date, which was one year after the notice. The lease set forth a complex formula for determining the amount of the payment. Fifth Third submitted a termination notice along with a promissory note for approximately $200,000.00. The landlord, however, claimed that the amount of the promissory note was incorrect and therefore, the termination was ineffective. Both parties filed suit for declaratory judgment.

In affirming the trial court the appellate court held:

> The lease's plain and unambiguous language requires Fifth Third to provide a termination notice and a promissory note within a certain time frame. The record is clear that Fifth Third did provide the required notice and promissory note within the lease's time requirements. The only dispute involved the amount of the promissory note.
>
> . . . .
>
> Under the plain language of the agreement, Fifth Third effectively exercised its termination right, and that right was not nullified by its failure to make the promissory note in the exact amount.

*Fifth Third Bank*, 2006 WL 2164700, at *5. Further, the court opined that the conditions precedent to Fifth Third exercising its termination right were that it provide a termination notice and a promissory note with a termination payment within the specified time. Fifth Third fulfilled both of those conditions, the object of which was to give Ducru sufficient notice of the lease's termination and a method for repayment of the Tenant Improvement Allowance it had previously advanced.

Plaintiff here, like the plaintiff in *Fifth Third Bank*, exercised its right to terminate the Agreement by delivering the notice of the termination at the correct time, date, and location set forth in the Amendment. The Seventh Amendment to the Agreement specifically allowed termination **only for nonacceptance** of the Wetlands Escrow Proposal. Plaintiff specifically stated that it was "exercising its right to terminate" the Agreement. The only "right" Plaintiff possessed was nonaccpetance of the Wetlands Escrow Proposal. Hence, the inclusion of the phrase "not willing to accept the Wetlands Escrow Proposal" was not a condition precedent to an effective termination. There certainly could have been no confusion that Plaintiff was indeed exercising its right to terminate for nonacceptance of the Wetlands Escrow Proposal.

Defendant's argument in opposition here does nothing to convince the Court otherwise. Defendant relies upon *Belfance v. Standard Oil*, No. 14688, 1990 Ohio App. LEXIS 5475 (Ohio

App. 9 Dist. Dec. 12, 1990), for the proposition that:

> [T]he court analyzed an analogous provision that required the effective date of the termination to be contained within the termination notice. The court held that the contract was clear and unambiguous. Interpreting the contract in any manner that would not require such effective date to be contained within the termination notice would be inconsistent with the plain language of the contract.

(Doc. # 32 at 16.) Defendant's analysis misses the mark.

The issue on appeal in *Belfance* was not whether the termination date must be contained in the termination notice. Instead, the issue was whether the contract provision at issue was clear and unambiguous. In considering this issue, the appellate court opined:

> The Agreements contain two separate termination provisions: the thirty day provision at issue here, and a for-cause provision not at issue. The former directly follows that quoted above: "This Agreement may be terminated, without cause, either by the carrier or by Sohio ***at any time during the initial period or thereafter*** by written notice of termination given by the terminating party to the other party at least thirty (30) days in advance of the effective date of termination, which effective date shall be specified in such notice." (Emphasis added.)
>
> Stone claims that this should be read as permitting termination of the agreements only at the end of each contract period, requiring a thirty day notice which specifies the termination date as the last day of the current contract period. Such an interpretation ignores some language in the Agreements, and fails to accord plain meaning to the remainder. The provision permits either party to terminate the Agreements "at any time during the initial period or thereafter" by delivering written notice at least thirty days prior to an indicated effective date. "At any time" is not subject to Stone's claim that termination may only occur at the end of each contract period. The termination provision states that the effective date must be specified in the notice; ***Stone's interpretation would make this provision surplusage***, as the termination date would be the anniversary date of the contract in every event. We find that the contract terms at issue are clear and unambiguous as a matter of law, and that the trial court did not err by reaching this conclusion. Stone's first error assigned is not well taken.

*Belfance*, 1990 Ohio App. LEXIS 5475, at 6-8 (second emphasis added). The *Belfance* court does not hold that the effective date must be in the notice because the contract required a date to be specified in the notice. The court referred only to that phrase to show how that language

would be surplusage if it interpreted the contract as Stone proposed, (*i.e.*, the termination period can only be at the end of each contract period). Thus, this case simply does not stand for that which Defendant contends, and indeed, is inapposite.

Accordingly, when viewing the evidence in the light most favorable to Defendant, and drawing all reasonable inferences in its favor, Defendant has failed to show that there is a genuine issue of material fact related to the conditions precedent to termination of the Agreement. That is, Plaintiff has fully complied with all conditions precedent to exercising its termination right.

### 2. *Plaintiff substantially complied with all terms in the termination provision.*

Plaintiff contends, and this Court agrees, that the provision requiring Plaintiff to specify that it is declining to accept the Wetlands Escrow Proposal is a constructive condition to Defendant's performance. This Court agrees.

Under Ohio law a party need only substantially comply with its contractual obligations that are mutually dependent and concurrent promises, as opposed to conditions precedent. When promises in a bilateral contract are mutually dependent and concurrent, a party's promises are constructive conditions to the other party's performance, and we apply the doctrine of substantial performance. *See, e.g., Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 113 (2d Cir. 1985). An Ohio appellate court explains the doctrine as follows:

> "Under [the doctrine of substantial performance], 'if one party's performance is a constructive condition of the contract, only "substantial" performance is required of the first party before he can recover under the contract.' " *Id.* at 113, quoting Farnsworth, Contracts (1982) 590, Section 8.12. In other words," . . . where a contract is made for an agreed exchange of two performances, one of which is to be rendered first, substantial performance rather than exact, strict or literal performance by the first party of the terms of the contract is adequate to entitle the party to recover on it." *Brown-Marx Assoc., Ltd. v. Emigrant Sav. Bank*, 703

10

F.2d 1361, 1367 (11th Cir. 1983).

*Kaufman*, 159 Ohio App.3d at 248 (citations omitted).  Also, for the doctrine of substantial performance to apply, the unperformed duties must not destroy the value or purpose of the contract.  *Hansel v. Creative Concrete & Masonry Constr. Co.*, 148 Ohio App. 3d 53, 56 (Ohio App. 10 Dist. 2002).  When the facts are undisputed, such as in the instant action, whether a party's conduct constitutes substantial performance is a question of law for the court.  *Interstate Gas Supply, Inc. v. Calex Corp.*, No. 04AP-980, 2006 Ohio App. LEXIS 575, *24 (citing *Luntz v. Stern*, 135 Ohio St. 225, 237 (1939)).

Defendant does not dispute that the doctrine of substantial compliance applies here.  Instead, Defendant introduces evidence in the form of affidavits of what the parties intended by the express language of the Seventh Amendment.  However, as both parties agreed, and the Court so stated above, in this situation, (*i.e.*, consideration of an unambiguous contract), extrinsic or parole evidence cannot be considered.  That is, although Defendant sets out the correct governing law with regard to extrinsic and parol evidence, it then ignores that law.  Defendant submits affidavit testimony of prior and contemporaneous conversations that allegedly vary the unambiguous intent of the termination provision at issue here.  The termination provision does not require Plaintiff to provide a good cause justification for declining to accept the Wetlands Escrow Proposal.

Consequently, it is irrelevant for the purposes of this motion why Defendant **believes** Plaintiff terminated the Agreement.  Indeed, Plaintiff was not required to provide an explanation as to why it declined accepting the Wetlands Escrow Proposal.  Thus, the clear purpose of the termination notice provision was to give the Defendant sufficient notice that Plaintiff would not

proceed to closing thereby allowing the Defendant to find alternative developers. *Fifth Third Bank v. Ducru Ltd. P'ship*, No. C-050564, 2006 WL 2164700, 2006-Ohio-3944 (Ohio App. 1 Dist. Jul 28, 2006) (holding that Fifth Third properly terminated the lease because it gave the notice that it intended to cancel the lease and that was the material purpose of the termination provision). Failure to specify that it was declining to accept the Wetlands Escrow Proposal did not destroy the purpose of the contract.

Accordingly, even when viewing the evidence in the light most favorable to Defendant and making all reasonable inferences in its favor, the evidence is so one-sided that Plaintiff must prevail as a matter of law.

## B. Fraudulent Misrepresentation

To set forth a cause of action for fraudulent misrepresentation, a plaintiff must establish (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Burr v. Bd. of County Comm'rs*, 23 Ohio St.3d 69, 73 (1986), *superceded in non-relevant part by statute in Stillwell v. City of Xenia*, No. 2000-CA-41, 2001 Ohio App. LEXIS 573 (Ohio App. 2 Dist. Feb. 16, 2001). In its motion for summary judgment, Plaintiff argues that Defendant cannot show that there is a genuine issue of material fact with regard to any of these elements. Defendant, however, makes no argument against this proposition in its memorandum in opposition to Plaintiff's motion for summary judgment. Consequently, it would be appropriate

for this Court to grant Plaintiff summary judgment on the basis of this alone. *See Muncie*, 328 F.3d at 873 (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.").

However, the Court agrees with Plaintiff's proposition that it is entitled to summary judgment on this cause of action because, *inter alia*, Defendant cannot demonstrate that it justifiably relied on the Agreement as guaranteed to close. That is, the Agreement contained numerous contingencies that allowed Plaintiff to terminate for any number of reasons throughout the negotiation and amendment process. Thus, any reliance that Defendant placed upon Plaintiff's representations while there were still contingencies that would allow Plaintiff to terminate was not justifiable.

Further, Defendant has not shown that it suffered any actual damages as a result of the alleged representations made by Plaintiff with regards to financing the project at issue here. The only allegation made by Defendant in this regard is in an affidavit attached to its memorandum in opposition that avers that "[a]s a result of Verdi's fraudulent misrepresentation, COCIC incurred expenses in performing its obligations under the Purchase Agreement and negotiation the various Amendments to the Purchase Agreement." This averment is insufficient to show damages.

Indeed, the costs to which Defendant cites were incurred during the due diligence period prior to closing when either party had the opportunity to terminate the Agreement pursuant to

any number of contingencies. These costs do not constitute damages that are the result of any representations made by Plaintiff with regard to its ability to obtain financing. Further, Defendant makes no argument that it had another buyer for the property.

Accordingly, the evidence is not such that a reasonable jury could return a verdict for Defendant and Plaintiff is entitled to summary judgment on the Defendant's cause of action for fraudulent misrepresentation.

## C. Unjust Enrichment

Plaintiff argues, and Defendant does not dispute, that Plaintiff is entitled to summary judgment on Defendant's claim for unjust enrichment. Like its claim for fraudulent misrepresentation, Defendant makes no argument in its memorandum in opposition to Plaintiff's motion for summary judgment related to its cause of action for unjust enrichment. Again, it would be appropriate for this Court to grant Plaintiff summary judgment on the basis of this alone. *See Muncie*, 328 F.3d at 873 (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

However, the Court agrees with Plaintiff's argument that even if Defendant had tried, it would have failed in showing that there is a disputed material issue of fact with regard to this cause of action. The doctrine of unjust enrichment is that a person will not be allowed to profit or enrich himself inequitably at another's expense. *Fairfield Ready Mix v. Walnut Hills Assoc., Ltd.*, 60 Ohio App. 3d 1, 3 (Ohio App. 1 Dist. Nov. 2, 1988) (citing *Freedline v. Cielensky*, 115 Ohio App. 138 (1961)). "As ordinarily defined, the concept of unjust enrichment includes not only loss on one side but gain on the other, with a tie of causation between them." *Id.* (citing 18 Ohio Jurisprudence 3d (1980) 271, Contracts, Section 343).

In the instant action, Defendant alleges in its counterclaim that Plaintiff was unjustly enriched because it advertised on its website that it was the selected developer of the Central Park of Gahanna project. However, after the negotiations failed, Plaintiff removed the advertisement and retained no benefit from Defendant. Further, if Plaintiff received any benefit from the advertisement on its website, that benefit was not unjust. *See Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984) (citing *Hummel v. Hummel*, 133 Ohio St. 520, 525 (1938)). Indeed, Plaintiff was the selected developer when it advertised such on its website.

Consequently, even when viewing the evidence in the light most favorable to Defendant, and drawing all reasonable inferences in its favor, Defendant has failed to show that there is a genuine issue of material fact related its cause of action for unjust enrichment.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment. (Doc. # 24.) Defendant is **ORDERED** to return to Plaintiff its $450,000.00 of earnest money. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**